[No. 22666. Department Two. May 19, 1931.]

JOHN E. BURKHEIMER et al., Appellants, v. THE CITY OF SEATTLE, Respondent.[1]

Burkheimer & Burkheimer and James H. Buchanan, for appellants.

A. C. Van Soelen and John E. Sanders, for respondent.

FULLERTON, J.—Block 18, in Porterfield's addition to the city of Seattle, is bounded on the south by a street known as North Forty-fifth street, on the east by a street known as Interlake avenue, and on the west by a street known as Stone way. Sometime prior to October 28, 1898, the Green Lake Electric Railway Company had constructed a line of street railway easterly along North Forty-fifth street over and across its

[1]Reported in 299 Pac. 381.

intersection with Stone way to a point somewhere near the center of the south boundary line of block 18. From this point, the road turned in a northeasterly direction and extended across lots 9 and 10 and other lots of block 18 until it entered Interlake avenue, and from thence it extended in a northerly direction along Interlake avenue.

Lots 9 and 10 of block 18, at the time of the construction of the railway, were owned by the Green Lake Home Building and Guarantee Company, and that company, on the date stated, conveyed by deed to the railway company a right of way for its street railway across the lots mentioned. The deed of conveyance, after making certain recitals showing the authority of the officers executing the instrument, continued as follows:

"Now, THEREFORE, this indenture witnesseth that said first party for and in consideration of the sum of One Dollar and of the construction and operation of the railway of said grantee over the route herein mentioned and of the benefits to said first party, accrued and to accrue therefrom, does by these presents, grant, bargain, sell, convey and confirm unto said party of the second part, and to its successors and assigns a right of way over and across the following described tracts, lots or parcels of land, situate, lying and being in the city of Seattle, county of King, state of Washington, and particularly bounded and described as follows, to-wit:

"A right of way for the railway of said grantee thirty (30) feet in width, that is to say, fifteen (15) feet in width on each side of the center line of the railway track of said grantee, as now constructed and operated over and across the following property, to-wit: Lot No. 6 in Block No. 1, and across the southeasterly portion of Block No. 18, both in Porterfield's Addition to Seattle, and across the northerly and northwesterly portion of Block No. 4, in Smith & Burns Addition to Seattle so long as said railway with either single or

double track, shall be maintained and operated thereon, but no longer and for no other purpose than the one above mentioned.

Together with the appurtenances, to have and to hold the said premises, with the appurtenances, unto said party of the second part, and to its successors and assigns forever.''

Later on, the city of Seattle succeeded to the interests of the Green Lake Electric Railway Company, and is itself now maintaining and operating the street railway line. In the year 1924, the city made a change in the course of the main line of the railway track. At the intersection of North Forty-fourth street with Stone way, the line was turned north on Stone way and connected again with the main line at a point north of block 18. The tracks of the old main line, from the point where it entered Interlake avenue northerly to the point where the new line intersected with it, were removed, and this part of the route was abandoned.

There was at the time of the change, and is now, a private coal yard on block 18, constructed near the tracks on the old main line. The city did not remove the rails on the old line track leading from the intersection of North Forty-fifth street with Stone way over and across block 18, but now maintains and operates it as spur track.

The appellants, Burkheimer and wife, are the successors in interest of the Green Lake Home Building and Guarantee Company to lots 9 and 10; having acquired the interests of that company in the lots by mesne conveyances. In this action, they seek to have the interest of the city in the lot forfeited and their title to the lots quieted against the claims of the city. To their complaint, which embodied the foregoing facts, the city interposed a demurrer, which the trial court sustained. A judgment dismissing their action

was entered after they had elected to stand on their complaint, and it is from this judgment that the appeal before us is prosecuted.

It is the contention of the appellants that the intention of the grantor who conveyed the right of way was to limit its use to the operation of the main line of the railway, and that, when the grantee changed the course of the main line, leaving what is, in effect, only a spur track across the granted premises, it abandoned the land for the purposes for which it was granted, and, because thereof, forfeited its right thereto.

The purport and intent of parties to a written instrument must be gathered, where possible, from the language of the instrument itself, considered with reference to the subject matter to which it relates and with reference to the surrounding conditions and circumstances, not by what either party thereto may aver to be its purport and intent. If the language of the instrument is plain and unambiguous, and the subject-matter does not indicate that the words used therein are employed in a technical or restricted sense, the instrument will be given the interpretation its language ordinarily implies.

Turning to the instrument here in question, it will be observed that the words of grant contained therein do not restrict the grantor to the use of the property granted for its main line tracks. It speaks of the "railway of said grantee," and grants to the grantee the use of the property granted "so long as said railway . . . shall be maintained and operated thereon . . ." The term "said railway" is broad enough to include the entire plant of the grantee, whether it be its main line or whether it be spur tracks or side tracks used and operated in connection with its main line.

It is not to be questioned, of course, that an entire abandonment of the property would work a forfeiture of the grant; but the city has not abandoned the property in fact. It still maintains and operates thereon, as a part of its railway system, a railway track connected with its main line. If there is an abandonment at all, therefore, it is an abandonment in law, and this we cannot conclude.

We think it unnecessary to review any of the many cases cited by the appellants in support of their contentions. That they were correctly decided we have no question, but the facts on which they are founded are not sufficiently parallel to the facts of the present case to make them applicable.

The judgment is affirmed.

TOLMAN, C. J., BEALS, MILLARD, and BEELER, JJ., concur.